STATE OF IOWA, Appellee, v. TOM PRICE, Appellant.

**HOMICIDE:** Self-Defense—Who Was Aggressor—Evidence. Under a
1   plea of self-defense, an accused may show, as bearing on the question as to who was the aggressor, that the prosecuting witness was enamored with the wife of the accused; and for such purpose a love letter from the prosecuting witness to the wife is admissible, even though it was written a year prior to the encounter in question.

**CRIMINAL LAW:** Trial—Misleading Instructions as to Defense. In
2   a prosecution in which the sole plea was self-defense, it is erroneous for the court to refer to the plea as "one of the defenses," in view of the abstract statement elsewhere found in the instructions to the effect that there is no such defense as "the unwritten law."

*Appeal from Wapello District Court.*—W. M. WALKER, Judge.

OCTOBER 17, 1924.

THE defendant was indicted for the crime of assault with intent to commit murder, and was convicted, and prosecutes this appeal.—*Reversed.*

*Gilmore & Moon,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *W. W. Epps,* County Attorney, for appellee.

FAVILLE, J.—I. Appellant is a married man. On the evening of the altercation out of which the indictment in this cause arose, appellant's wife had attended a dance, with some friends of hers. The record shows that one Bowes had been intimately acquainted with appellant's wife for some time, and was present at the dance, and twice endeavored to dance with appellant's wife. Appellant went to the dance near midnight, for the purpose of going home with his wife; and appellant and his wife and Bowes left the place at about the same time. The evidence tends to show that shortly after leaving the dance, Bowes approached appellant and took hold of him; that some words passed between them, and blows were exchanged. After this, appellant got into a Ford car and drove away, and Bowes walked down the street, in company with some friends. Very shortly after this, Bowes approached the car where appellant had stopped, and observed appellant getting out of the car. An altercation followed almost immediately; and during this, Bowes was stabbed by a knife in the hand of appellant. It is the contention of appellant that Bowes approached him with a knife, and that he took the knife away from Bowes and stabbed Bowes with it.

But two errors for reversal are urged on the appeal: one respecting the exclusion of testimony, and the other in regard to the instructions.

Appellant was permitted to prove that Bowes had been on intimate terms with his wife, and that she had informed appellant of Bowes' attentions to her. In connection with this sub-

1. HOMICIDE: self-
defense: who was
aggressor: evi-
dence.
ject-matter, appellant testified that he had ob-
tained and read a letter which Bowes had writ-
ten to appellant's wife. The letter was identified
and offered in evidence in behalf of appellant, and, on objection,
it was excluded. The letter so offered was written some thir-
teen or fourteen months before the fight. The letter is un-
doubtedly what is commonly described as a "love letter." In
it Bowes refers to the fact that he had been out west, and re-
turned to be with appellant's wife. He protested his love for
her, and expressed a desire to see her or hear from her.

This letter was properly admissible in evidence, under the
facts in this case. The court seems to have been of the opinion,
in making its ruling, that the letter was not admissible because
of the remoteness of time between its writing and the time of
the fight; and the State contends that there had been ample op-
portunity for "cooling time," between the writing of the letter
and the altercation. We think, however, that the court adopted
an erroneous view of the purpose of the introduction of this
letter. It was not claimed that appellant struck Bowes in the
heat of passion, or that he sought out Bowes because of the con-
tents of the letter, to do him injury. The contention of appel-
lant throughout the trial was that Bowes was the assailant and
the aggressor, and that appellant did all that he did in self-
defense. Bowes, on the other hand, as the prosecuting witness,
testified that appellant was the aggressor. Under these circum-
stances, it was proper for the jury to have before them the
evidence in regard to the relation that existed between Bowes
and appellant's wife. This was not for the purpose of justify-
ing appellant or excusing him, if he was the aggressor, but it
did have a legitimate and proper bearing on the question as to
who was the aggressor; and this, of course, was involved in
appellant's contention that he struck in self-defense. The evi-
dence had an important bearing upon the question of the exist-
ence of a hostile motive in the mind of the witness Bowes to-
ward appellant, and as bearing on the question of who was the
aggressor in the altercation. A similar question was before us
in *State v. Thomas,* 169 Iowa 591, in which we said:

"The evidence in behalf of the State made out a prima-facie

case of unprovoked murder. To meet this, a plea of self-defense was interposed, in support of which defendant had testified that deceased, after applying to him opprobrious epithets, assailed him with a sword, and that he discharged his revolver to save his own life. This evidence tendered, tended to establish the existence of a hostile motive in the mind of deceased, and to show the apprehension of increased or greater danger in that of appellant. Without such evidence, the jury could not know, as the defendant did, the attitude of deceased's mind toward him, nor would they be in a situation to view the acts of deceased from his viewpoint. Such testimony would have thrown light upon the motive or purpose actuating deceased in what he said or did, and also upon the conduct of the defendant upon the occasion, and the motive which actuated him in killing the deceased. The phase of the evidence adduced by defendant having presented a case of self-defense, it was competent for him to go farther, and with this as a predicate, strengthen it by showing that deceased, by his own previous conduct, whatever that might have been, if it had such tendency, not only evidenced an evil purpose toward defendant, but that defendant was aware of this, and was likely, in their relations one with the other, to have that in mind when dealing with him.''

In the *Thomas* case we cited with approval *Gafford v. State,* 122 Ala. 54 (25 So. 10), where the precise question is ably discussed.

In *Blackerby v. Commonwealth* (Ky.), 255 S. W. 824, it is said:

''One who has become enamored of or unduly intimate with the wife of another, and has caused her to take steps to procure a divorce, is much more apt to entertain a feeling of jealousy and hostility toward her husband, and to anticipate an attack at his hands and take the initiative, in order to avoid the consequences, than one whose relations with the wife are altogether proper. * * * As the evidence of what occurred at the time of the homicide was conflicting, we conclude that the offered evidence should have been admitted, to enable the jury to determine who was the aggressor, in the light of deceased's state of feeling towards accused and its probable effect on his conduct.''

See, also, *Downs v. State,* 18 Ala. App. 451 (93 So. 76);
*Moorman v. State,* 109 Miss. 848 (69 So. 1000).

Appellant's counsel made clear, at the time of the offer of
the letter, the purpose for which it was offered. It should have
been received in evidence for such purpose, and a proper in-
struction given to the jury in relation thereto.

II.   In Instruction No. 17, the court told the jury:

"The defendant in this case pleads as one of his defenses
that, at the time of the occurrences charged against him, he
was acting in self-defense, and was, therefore, justified and
legally excused in what he did."

Complaint is made of the use of the words "one of his de-
fenses," in this connection. Appellant insists that he presented
but one defense. He made no denial of the fact that he stabbed
the prosecuting witness, and his sole defense was
2. CRIMINAL LAW: that he did it in self-defense. Appellant con-
trial: misleading
instructions as
to defense.     tends that the instruction complained of was
erroneous, when taken in connection with Instruction No. 20,
in which the court told the jury that there is no such thing
known to the law of this state as "the unwritten law." Appel-
lant does not complain that Instruction No. 20 is erroneous, as
an abstract statement of the law, but does complain that the in-
structions, when taken together, conveyed to the jury the im-
pression that appellant was interposing two defenses, namely:
that of self-defense and that of the so-called "unwritten law."

It is scarcely possible to read the instructions as a whole
without arriving at such a conclusion. The court was unfor-
tunate in the use of the words "one of his defenses," in Instruc-
tion No. 17; and while Instruction No. 20 did not incorrectly
state the rule of law, it was unfortunate that the same was
given, in connection with Instruction No. 17. The situation com-
plained of can and should be avoided upon a retrial of this
cause.

For the error pointed out, the case must be, and it is,—
*Reversed.*

ARTHUR, C. J., and EVANS and PRESTON, JJ., concur.